**This order is SIGNED.**

**Dated: April 14, 2016**

*/s/ J T Marker*

**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>VENUS EMMA CASTILLO,<br><br>　　　　　　　　　　　　Debtor. | Bankruptcy Case No. 12-34389<br><br>Chapter 7 |
| STEPHEN W. RUPP, as Chapter 7 Trustee,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN A. POSSO,<br><br>　　　　　　　　　　　　Defendant. | Adversary Proceeding No. 13-2176<br><br>Judge Joel T. Marker |

## MEMORANDUM DECISION

　　　　A chapter 7 trustee is charged with collecting property of the estate, reducing it to money, and distributing funds to creditors as expeditiously as possible.[1] Among the tools that the trustee may use to collect property of the estate are Bankruptcy Code §§ 544 and 548, which allow the trustee to pursue property that the debtor transferred pre-petition to another person for no consideration or with actual fraudulent intent. Broadly speaking, the purpose of these fraudulent

---

[1] 11 U.S.C. § 704(a).

1

transfer provisions is to prevent an asset that was owned by the debtor from being transferred away to the detriment of her creditors.

In an effort to fulfill his statutory duties, the trustee in this case, Stephen Rupp ("Trustee"), brought the present adversary proceeding against Martin Posso, the brother of Venus Castillo, the debtor in the underlying chapter 7 case. The Trustee seeks to recover the value of a 2004 Ford F-150 truck based on an alleged fraudulent transfer of the truck from Castillo to Posso. In response to the Trustee's claims, Posso asserts that his sister did not, in fact, own the truck at the time of the transfer. Instead, Posso says that Osvelia Pratt—Castillo and Posso's mother—owned the truck and transferred it to him.

The Court conducted a trial on March 24, 2016, at which it heard the testimonies of Posso, Pratt, and Castillo.[2] After considering the evidence properly before the Court, assessing the credibility of the relevant witnesses, weighing the parties' arguments, and conducting an independent review of applicable law, the Court issues the following Memorandum Decision to explain why the Trustee's claims under §§ 544(b)(1) and 548(a)(1) must fail.

## I. FACTUAL BACKGROUND

On April 15, 2006, Pratt and Castillo entered into a Motor Vehicle Contract of Sale with Willey Ford Bountiful to purchase the truck for $24,993.[3] Pratt and Castillo agreed that Castillo and her then-husband, Luis Castillo Ramos, could use the truck for Castillo Ramos's business, Curb Appeal—at which Castillo also worked—in exchange for giving Pratt rides to and from work and for any other transportation she needed.[4] Though Pratt obtained the financing necessary to purchase the truck, Castillo and Castillo Ramos agreed to make the payments on the

---

[2] The Court also heard the testimony of the Trustee's valuation expert witness, David Olson. Because the value of the truck does not factor into the Court's decision in this case, it is not necessary to review Olson's testimony.
[3] Pltf. Exh. 11. Castillo also traded in her 2002 Honda Civic, on which she owed a balance of $8,094.37, for a net trade-in allowance of $0.
[4] Pltf. Exh. 12.

loan and pay for maintenance and necessary repairs.[5] The record is not entirely clear, but the truck's certificate of title initially showed both Castillo and Pratt, or possibly just Pratt, as owners.[6]

Unfortunately for Pratt, Castillo and Castillo Ramos stopped making payments shortly after the truck was purchased.[7] Worried about the possible impact on her credit, Pratt withdrew money from her retirement account, and on February 5, 2007, she paid Wells Fargo $24,805.84 in full satisfaction of the truck loan.[8]

On December 16, 2008, Castillo and Castillo Ramos divorced. The Decree of Divorce awarded Castillo ownership of the truck, at least as between her and Castillo Ramos.[9] In the Statement of Income, Expenses, Assets & Liabilities attached to the Decree of Divorce, Castillo stated that she owed Pratt $30,000 for "bill consolidation," which included the amount Pratt paid for the truck.[10] Despite the Decree of Divorce, Castillo Ramos continued to use the truck, and Castillo drove a Mazda 3 that the Decree of Divorce awarded to Castillo Ramos.[11] Castillo still drove the Mazda at the time of her § 341 meeting of creditors, and she had not driven or possessed the truck for "several years" prior to filing her bankruptcy petition.[12]

After the divorce, Castillo wanted to use the truck as collateral to help Curb Appeal obtain a loan.[13] To that end, Pratt allowed Castillo to remove Pratt's name from the certificate of

---

[5] Pltf. Exh. 12; 3/24/16 Trial Transcript at 11:58:10 a.m. to 11:59:55 a.m.
[6] Def. Exh. A. Neither party presented the original certificate of title, and the witnesses' testimonies did not clearly identify whose name the title was in when it was originally issued.
[7] 3/24/16 Trial Transcript at 11:59:04 a.m. to 11:59:26 a.m.
[8] Def. Exh. B.
[9] Pltf. Exh. 1.
[10] Pltf. Exh. 1; 3/24/16 Trial Transcript at 10:28:02 a.m. to 10:28:57 a.m.
[11] Pltf. Exh. 8 at 11.
[12] *Id.* at 13.
[13] Trial Transcript at 10:35:50 a.m. to 10:36:45 a.m.

title, and Utah's Division of Motor Vehicles issued a corrected certificate of title in Castillo's name on May 11, 2011.[14]

Castillo Ramos drove the truck until late 2011, when he dropped it off in Pratt's front yard.[15] The truck was not in good shape. According to Posso, the truck needed new tires, engine coils, and spark plugs, and the engine was difficult or impossible to start.[16] In September of 2012, Posso approached his mother about the truck and asked her what she intended to do with it, since it had sat in her yard for several months.[17] Pratt told Posso that he could have the truck if he could repair it and remove it from her yard.[18] After discussing it with his wife, Posso decided to take the truck. Pratt told Castillo about the arrangement and requested that Castillo transfer the title to Posso.[19] Castillo agreed to do so, and she transferred the title to Posso's wife, Lynnie Posso.[20] The DMV issued a new certificate of title to Mrs. Posso on October 4, 2012.[21]

Castillo filed her chapter 7 bankruptcy petition on November 14, 2012, and Rupp was appointed as the chapter 7 trustee. Castillo failed to disclose the truck or the transfer of title in her bankruptcy statements and schedules.[22] At her § 341 meeting of creditors, held on December 12, 2012, the Trustee asked Castillo about the vehicles she owned, at which time she mentioned the truck. Initially, Castillo told the Trustee that her ex-husband was using the truck,[23] but later

---

[14] Pltf. Exh. 4. Castillo testified that she helped Curb Appeal obtain a business loan after her divorce with Castillo Ramos was finalized. However, in the Statement of Income, Expenses, Assets & Liabilities attached to their Decree of Divorce, the parties indicate that the truck "was used as collateral to secure a business loan." It is unclear if there were multiple business loans secured by the truck, and there is no evidence that any creditor placed a lien on the vehicle in May of 2011 or anytime thereafter.
[15] Pltf. Exh. 12; 3/24/16 Trial Transcript at 12:13:54 p.m. to 12:14:20 p.m.
[16] 3/24/16 Trial Transcript at 11:09:40 a.m. to 11:11:15 a.m.
[17] 3/24/16 Trial Transcript at 11:08:50 a.m. to 11:08:55 a.m.
[18] 3/24/16 Trial Transcript at 12:14:45 p.m. to 12:15:56 p.m.
[19] Pltf. Exh. 12.
[20] Pltf. Exh. 5.
[21] Pltf. Exh. 6.
[22] Main Case Docket #2.
[23] Pltf. Exh. 8 at 6.

4

in the meeting she explained that "[i]t actually transferred to my brother"[24] and that she "just gave it to [her] brother."[25] Acting on the information he obtained at the meeting of creditors, the Trustee filed this adversary proceeding on May 24, 2013, seeking to recover the value of the truck from Posso.

## II. DISCUSSION

The threshold issue in any fraudulent transfer action, whether brought under § 548 or a state statute incorporated by § 544, is whether the debtor had an interest in the property that was transferred.[26] "For the purposes of most bankruptcy proceedings, property interests are created and defined by state law. Once that state law determination is made, however, [the Court] must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."[27]

There is no dispute that Castillo transferred legal title to the truck to Mrs. Posso. In Utah, however, the fact that the registration and title of a vehicle are in an individual's name "establishes only a presumption of ownership, rebutted by legally relevant evidence presented at trial and deemed credible by the court."[28] Accordingly, Posso must rebut the presumption that Castillo owned the truck, and the Trustee must rebut the presumption that the truck was transferred to Mrs. Posso, as opposed to Posso.

Utah courts have considered the following factors as evidence of equitable ownership of a vehicle: "(1) possession; (2) agreement or intent to purchase; (3) exclusive use; (4) payment or value exchanged; (5) title or application for title, if applicable; (6) insurance or application for

---

[24] Pltf. Exh. 8 at 12.
[25] *Id.* at 14.
[26] *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . of an interest of the debtor in property . . . ."); U.C.A. § 25-6-2(2) ("'Asset' means property of a debtor . . . .").
[27] *Marshall v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008).
[28] *Lake Philgas Serv. v. Valley Bank & Trust Co.*, 845 P.2d 951, 957 (Utah Ct. App. 1993).

insurance; (7) control; (8) bill of sale; and (9) third-party security interests."[29] The Court will use those factors as guides to help determine whether the Trustee sued the right person and to determine if Castillo was the equitable owner of the truck at the time that she transferred title.

**A. Posso is the equitable owner of the truck.**

Though Posso does not raise the issue, one of the Court's concerns is whether the Trustee sued the correct defendant, since Castillo transferred the title of the truck to Mrs. Posso. In his testimony at the trial, Posso consistently referred to the truck as "my truck," and Pratt testified that she gave the truck to him.[30] Posso also testified about his personal attachment to the truck, because it represents his mother's "hard work."[31] According to Posso, the title is in Mrs. Posso's name so that she could obtain a loan secured by the truck, because her credit is better than his.[32] So despite the fact that the truck is titled in Mrs. Posso's name and is subject to a third-party security interest for which Mrs. Posso is liable, the Court is satisfied that Posso is the equitable owner of the truck.

**B. Castillo was not the equitable owner of the truck at the time that she transferred the title.**

On the other hand, the facts of this case show that Castillo was not the equitable owner of the truck at the time she transferred the title to Mrs. Posso. When they purchased the truck, Castillo and Pratt apparently intended to co-own the truck. They both signed the purchase contract, the title was (probably) in both of their names, and both of them received some benefit from having the truck. But sometime between 2006 and the time that Castillo filed bankruptcy,

---

[29] *See Lohman v. Headley*, 293 P.3d 380, 382 (Utah Ct. App. 2012) (citing cases).
[30] 3/24/16 Trial Transcript at 12:14:41 p.m. to 12:14:58 p.m.
[31] 3/24/16 Trial Transcript at 11:16:50 a.m. to 11:16:53 a.m.
[32] 3/24/16 Trial Transcript at 11:06:22 a.m. to 11:07:07 a.m.

their arrangement surrounding the ownership of the truck changed; the Trustee says that Castillo became the sole owner, while Posso says that Pratt became the sole owner.

The Trustee argues that at least three separate circumstances establish that Castillo owned the truck. First, the Trustee points to the Decree of Divorce, which awarded the truck to Castillo. But the Decree of Divorce only binds Castillo and Castillo Ramos, since they are the parties to it. Castillo testified that she wanted to ensure that she retained the truck, at least as between her and Castillo Ramos, because her mother had already paid for it.[33] In other words, Castillo was protecting the truck for Pratt because "that's where her money was."[34] Second, the Trustee argues that Pratt's agreement to change the title to Castillo's name indicates that Castillo owned the truck. That fact could be interpreted as Pratt's relinquishment of ownership. However, it could also be interpreted exactly as Pratt credibly testified—as part of her continuous effort to help her daughter when her daughter needed help.[35] The Court finds the latter explanation more plausible. Third, the Trustee says that Castillo's testimony at her meeting of creditors proves that she owned the truck. It is true that Castillo testified at her meeting of creditors that *she* gave the truck to her brother.[36] But the Trustee cut her off when she attempted to explain the circumstances of the transfer at that time, and based on the credible testimony presented by all three family members at trial, the Court is convinced that Pratt gave the truck to Posso. Castillo simply transferred the title at Pratt's behest.

Additional facts bolster the Court's conclusion that Castillo was not the equitable owner of the truck. Castillo had not driven the truck since some time prior to her divorce in 2008, and it is not clear if she was ever the primary driver of the truck. Neither party presented evidence that

---

[33] 3/24/16 Trial Transcript at 10:36:45 a.m. to 10:36:58 a.m.
[34] *Id.*
[35] 3/24/16 Trial Transcript at 12:07:20 p.m. to 12:08:17 p.m.
[36] Pltf. Exh. 8 at 14.

Castillo insured the truck, though she testified at her § 341 meeting of creditors that she did not use the truck because she could not afford "anything with the truck."[37] Pratt also exercised a substantial degree of control over the truck. Pratt told Castillo to keep the truck in the Decree of Divorce in order to protect Pratt's investment.[38] Pratt, not Castillo, told Posso that he could have the truck.[39] And Pratt directed Castillo to transfer the title of the truck. But the most important indicator of Pratt's ownership, in this Court's opinion, is the fact that she paid for the truck. Absent some clear intent to the contrary, it is objectively reasonable to expect that the person who pays for something owns that thing. In addition, the testimonies of all three family members in this case reflect their subjective understanding that Pratt owned the truck. The Court believes their testimonies and agrees with their understanding. In sum, the weight of the evidence supports a finding that Pratt was the equitable owner of the truck.

### III. CONCLUSION

It is perfectly logical for a trustee to pursue a fraudulent transfer claim when the debtor transferred title to a vehicle, without consideration, just over a month prior to filing her bankruptcy petition. But under Utah state law, the Court must look past the obvious and examine the entirety of the circumstances to determine whether or not the debtor owned the vehicle. After carefully weighing the evidence, and considering the testimony of the witnesses, the Court finds that Castillo did not own the truck in question, and its value should not be recovered for the benefit of her creditors. Castillo only transferred bare legal title, which is not what the Trustee seeks to recover. Accordingly, the Trustee's claims for relief under §§ 544(b)(1) and 548(a)(1) are DENIED, and the adversary proceeding will be DISMISSED.

---

[37] Pltf. Exh. 8 at 13.
[38] 3/24/16 Trial Transcript at 12:19:40 p.m. to 12:20:42 p.m.
[39] It is also worth noting that Posso approached Pratt, not Castillo, to ask her about her intentions with the truck.

The Court will enter a separate judgment consistent with this Memorandum Decision.

-------------------------------------------END OF DOCUMENT-------------------------------------------

**\_\_\_\_\_ooo0ooo\_\_\_\_\_**
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Reid Tateoka
McKay Burton & Thurman
15 W. South Temple, Suite 1000
Salt Lake City, UT 84101
    *Counsel for Plaintiff*

Martin A. Posso
3496 Appaloosa Way
Eagle Mountain, UT 84005
    *Defendant*